FILED
January 22, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
By: DT
Deputy

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | **CRIMINAL NO.** |
| | § | **Case No: EP:25-CR-00163-DB** |
| **Plaintiff,** | § | **SEALED** |
| **v.** | § | **INDICTMENT** |
| | § | |
| **ARACELI BENITEZ,** | § | **Counts 1 – 7:** 18: §1343: Wire Fraud |
| | § | |
| **Defendant.** | § | |
| | § | **Counts 8 – 15:** 18: §1344: Bank Fraud |
| | § | |
| | § | **Counts 16 – 17:** 18 USC §1957: Money Laundering |
| | § | |
| | § | **Count 18:** 31 USC §5324(b)(1): Structuring Transactions to Evade Reporting Requirement |
| | § | |
| | § | **Counts 19 – 20:** 18 USC §1028A: Aggravated Identity Theft |
| | § | |
| | § | **Count 21-** 18 USC §287: False, Fictitious or Fraudulent Claims to the IRS |
| | § | |
| | § | ***Notice of Government's Demand for Forfeiture*** |

**THE GRAND JURY CHARGES**:

**COUNTS 1 -7**
**18 U.S.C. §1343**
**(Wire Fraud)**

**INTRODUCTION**

At all times relevant to this indictment:

1. The defendant, **ARACELI BENITEZ,** was the owner of an insurance and tax services company and of a home health services company, both of which were located in the Western District of Texas.

2. The Small Business Administration (SBA), an independent agency of the federal government, was created to aid, counsel, assist and protect the interests of small business

concerns, preserve free competitive enterprise, and maintain and strengthen the overall economy of the United States.

3. The Paycheck Protection Program (PPP) was a COVID-19 pandemic relief program administered by the SBA that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

4. The Credit Union was a federally insured financial institution, as defined in 18 U.S.C. § 20, with branches located in El Paso, Texas and Las Cruces, New Mexico. The Credit Union was a third-party participating lender in the PPP.

5. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, or jewelry, or to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

6. To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. To be eligible to obtain the PPP loan, the application required the business, through its authorized representative, to acknowledge the program rules and make certain affirmative certifications, including that the business was in operation and either had employees to whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

7. PPP loan applications were electronically submitted or caused to be submitted and received through SBA electronic mail servers located in Virginia and Oregon. Once approved, the client received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the borrower. A submission to the SBA could be made for legitimate applications for loan forgiveness.

8. The Coronavirus Aid, Relief, and Economic Security Act (CARES Act), enacted on March 27, 2020, provided for an "Employee Retention Tax Credit" (ERC), which was designed to encourage businesses to keep employees on their payroll.

9. The ERC, referred to as a COVID-related tax credit, is a refundable tax credit against certain employment taxes equal to 50% of the qualified wages an eligible employer paid to employees after March 12, 2020, and before July 1, 2021.

10. For purposes of the ERC, an eligible employer is a business with operations that have been partially or fully suspended due to governmental orders related to COVID-19, or a business that has a 50% decline in gross receipts as compared to the same quarter in 2019.
11. For each employee of an eligible business, wages (including certain health plan costs) up to $10,000 could be counted to determine the amount of the employee retention credit.

12. IRS Form 941 is used by an employer to report the income taxes, Social Security tax, and/or Medicare tax that was withheld from an employee's paycheck and to pay the employer's portion of the Social Security and Medicare taxes.

13. IRS Form 941 may also be used to claim COVID-related tax credits, including the ERC.

14. IRS Form 941-X, the Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund, is used by the employer to correct any errors made in the IRS Form 941.

15. Claims for ERC are based on the amount of qualified wages paid by eligible employers during applicable quarters. These claims are made by amending employment tax returns by using IRS Form 941-X.

Beginning on or about April 9, 2020, and continuing through and including on or about December 31, 2022, specifically, on or about the following dates, in the Western District of Texas, the District of New Mexico and elsewhere, defendant,

**ARACELI BENITEZ,**

knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, both by affirmative acts and by deceitful concealment and omission of material facts; that is, with the intent to defraud a federally insured credit union, the Credit Union, the Small Business Administration (the SBA), and the defendant's clients, among others, the defendant, **ARACELI BENITEZ**, submitted fraudulent loan applications and requests for fund disbursement to the Paycheck Protection Program (PPP), a federal government COVID-19 pandemic relief program administered by the SBA; and in execution and in furtherance of the scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds described below, each constituting a separate count of this indictment:

| Count | Client | Date | Wire Transmission |
|---|---|---|---|
| 1 | D.G. | 4/9/2021 | E-mail |
| 2 | E.M. | 3/18/2021 | E-mail |
| 3 | B.W.A. | 5/26/2021 | E-mail |
| 4 | B.W.A. | 5/21/2021 | Deposit |
| 5 | D.G. | 4/9/2021 | Deposit |
| 6 | R.C.G. | 4/9/2021 | Deposit |
| 7 | D.G., B.R. | 3/1/2021 – 7/31/2021 | Radio advertisement |

## SCHEME AND ARTIFICE TO DEFRAUD

It was part of the scheme and artifice to defraud that:

1. Defendant**, ARACELI BENITEZ,** attracted and induced clients to hire her to apply for Paycheck Protection Program (PPP) loans through commercials, social media, and paid radio advertisements, usually in Spanish;

2. The defendant, fraudulently represented the alleged legality of her services of applying for PPP loans by misrepresenting material facts about the PPP concerning the client's eligibility for a loan, among other things;

3. The defendant sent and caused to be sent to the Credit Union, by electronic mail (email), approximately 120 PPP loan applications, ostensibly on behalf of and to secure loans for clients of her business, which applications contained material misrepresentations and omissions;

4. Defendant submitted loan applications on behalf of herself and her clients by using the email address, "garaas****************@g****.com," to send PPP loan applications from her office in El Paso, Texas to an email address, "l********z@**********fcu.org," subscribed to by the Credit Union located in Las Cruces, New Mexico;

5. Unbeknownst to her clients, and to fraudulently induce the SBA to approve loans to which the clients were not entitled, defendant, **ARACELI BENITEZ**, included fraudulent information on the loan applications including, among other things, false federal income tax documentation, false information about her clients' businesses, and false information about her clients' need and qualifications for the loan;

6. To facilitate the approval of the PPP loans, defendant, **ARACELI BENITEZ**, instructed her clients to open accounts at the Credit Union where the client was to receive the PPP loan proceeds via an electronic funds transfer; and
7. Defendant submitted approximately 156 loan applications for approximately $2,305,294.06 U.S. Dollars,

each and all in violation of Title 18, United States Code, Section 1343.

**COUNTS 8 - 15**
**18 U.S.C. §1344**
**(Bank Fraud)**

The Introduction and Scheme and Artifice to Defraud in Counts One through Seven, are hereby re-alleged and incorporated by reference as though fully set forth herein.

On or about the following dates, in the Western District of Texas, the District of New Mexico and elsewhere, defendant,

**ARACELI BENITEZ,**

knowingly executed a scheme and artifice to defraud a federally insured financial institution, and to obtain moneys, funds, and other property owned by and under the control of the financial institution, specifically, the Credit Union, by means of materially false and fraudulent pretenses, representations, and promises, in that defendant, **ARACELI BENITEZ**, misrepresented and concealed the true financial condition of her clients, the loan applicants, through the submission of fraudulent loan applications and other false statements which caused the Credit Union to approve loans that would otherwise, if truthful, not have been approved, as described below, each constituting a separate count of this indictment:

| Count | Name on Application | Date |
|---|---|---|
| 8 | **ARACELI BENITEZ** | 7/14/2020 |
| 9 | A.A. | 4/7/2021 |
| 10 | B.R. | 4/20/2021 |
| 11 | D.G. | 4/7/2021 |
| 12 | J.M. | 3/15/2021 |
| 13 | R.R. | 1/14/2021 |
| 14 | E.M. | 3/9/2021 |
| 15 | R.C.G. | 3/9/2021 |

each and all in violation of Title 18, United States Code, Section 1344.

**COUNT 16**
**18 U.S.C. §1957**
**(Money Laundering)**

The Introduction and Scheme and Artifice to Defraud in Counts One through Seven, are hereby re-alleged and incorporated by reference as though fully set forth herein.

On or about August 6, 2021, in the Western District of Texas, the District of New Mexico, and elsewhere, defendant,

**ARACELI BENITEZ**,

knowingly engaged in and attempted to engage in a monetary transaction in criminally derived property of a value greater than $10,000.00, which funds were derived from specified unlawful activity, namely, defendant, **ARACELI BENITEZ**, attempted to withdraw approximately $226,002.00 from a Credit Union account, which funds were derived from wire fraud and bank fraud, as alleged in this Indictment, all in violation of Title 18, United States Code, Section 1957.

**COUNT 17**
**18 U.S.C. §1957**
**(Money Laundering)**

The Introduction and Scheme and Artifice to Defraud in Counts One through Seven, are hereby re-alleged and incorporated by reference as though fully set forth herein.

On or about July 7, 2022, in the Western District of Texas, the District of New Mexico, and elsewhere, defendant,

**ARACELI BENITEZ**,

knowingly engaged in and attempted to engage in a monetary transaction in criminally derived property of a value greater than $10,000.00, which funds were derived from specified unlawful activity, namely, the defendant, **ARACELI BENITEZ**, deposited a cashier's check into an account at the Credit Union, which check totaled approximately $16,500.00 and which funds were derived from wire fraud and bank fraud, as alleged in this Indictment, all in violation of Title 18,

United States Code, Section 1957.

**COUNT 18**
**31 U.S.C. §5324(b)(1)**
**(Structuring Transactions to Evade Reporting Requirement)**

The Introduction and Scheme and Artifice to Defraud in Counts One through Seven, are hereby re-alleged and incorporated by reference as though fully set forth herein.

Beginning on or about July 16, 2021, and continuing through and including on or about November 30, 2021, in the Western District of Texas, the District of New Mexico, and elsewhere, defendant,

**ARACELI BENITEZ,**

knowingly and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5331 and the regulations promulgated thereunder, did cause and attempt to cause a nonfinancial trade or business, that is a builder, to fail to file a report required under Section 5331 of Title 31, and any regulation prescribed under any such section, by dividing cash payments to the builder and paying the business in amounts under $10,000, all in violation of Title 31, United States Code, Sections 5324(b)(1) and 5324(d) and Title 31, Code of Federal Regulations, Section 1010.330.

**COUNT 19**
**18 U.S.C. §1028A**
**(Aggravated Identity Theft)**

The Introduction and Scheme and Artifice to Defraud in Counts One through Seven, are hereby re-alleged and incorporated by reference as though fully set forth herein.

On or about March 19, 2021, in the Western District of Texas, the District of New Mexico and elsewhere, defendant,

**ARACELI BENITEZ,**

did knowingly possess, use, and transfer, without lawful authority, a means of identification of

another person, E.M., during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, 18 U.S.C. §1343, Wire Fraud and 18 U.S.C. § 1344, Bank Fraud, knowing that the means of identification belonged to another actual person, in violation of Title 18, United States Code, Section 1028A(a)(1).

**COUNT 20**
**18 U.S.C. §1028A**
**(Aggravated Identity Theft)**

The Introduction and Scheme and Artifice to Defraud in Counts One through Seven, are hereby re-alleged and incorporated by reference as though fully set forth herein.

On or about January 14, 2021, within the Western District of Texas, the District of New Mexico and elsewhere, defendant,

**ARACELI BENITEZ**,

did knowingly possess, use, and transfer, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, 18 U.S.C. §1343, Wire Fraud and 18 U.S.C. § 1344, Bank Fraud, knowing that the means of identification belonged to another actual person, R.R., in violation of Title 18, United States Code, Section 1028A(a)(1).

**COUNT 21**
**18 USC § 287**
**(False or Fictitious Claims to the IRS)**

The Introduction and Scheme and Artifice to Defraud in Counts One through Seven, are hereby re-alleged and incorporated by reference as though fully set forth herein.

On or about, July 12, 2022, in the Western District of Texas, the District of New Mexico, and elsewhere, defendant,

**ARACELI BENITEZ**,

made and presented, and caused to be made and presented, to the Internal Revenue Service, an agency of the United States Department of the Treasury, a claim against the United States for payment of a refund of taxes in the amount of $ 52,267.92, knowing that claim to be false, and fictitious, in that, the defendant, **ARACELI BENITEZ**, made the claim by preparing and causing to be prepared, and presenting and causing to be presented to the Internal Revenue Service, an IRS Form 941-X, for calendar year 2022, requesting a refund to which defendant knew she was not entitled, in violation of Title 18, United States Code, Section 287.

**NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE**
**[*See* Fed. R. Crim. P. 32.2]**

**I.**
**Wire Fraud Violation and Forfeiture Statutes**
**[Title 18 U.S.C. §§ 1343 and 1344, subject to forfeiture pursuant to Title 18 U.S.C §§ 981(a)(1)(C) and 982(a)(2)(A), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c)]**

As a result of the foregoing criminal violations set forth in Counts One through Fifteen, the United States of America gives notice to defendant, **ARACELI BENITEZ**, of its intent to seek the forfeiture of the property described below upon conviction and pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c), which state:

**Title 18 U.S.C. § 981. Civil Forfeiture**
(a)(1) The following property is subject to forfeiture to the United States:
* * *
(C) Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation . . . of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

**Title 18 U.S.C § 982. Criminal Forfeiture**
(a)(2) The court, in imposing sentence on a person convicted of a violation of, or conspiracy to violate-
* * *
(A) section . . . 1344 of this title, affecting a financial institution . . . shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation.

Wire Fraud is an offense constituting "specified unlawful activity" as defined in Title 18 U.S.C. § 1956(c)(7).

## II.
## Money Laundering Violation and Forfeiture Statutes
## [Title 18 U.S.C. § 1957, subject to forfeiture pursuant to Title 18 U.S.C. § 982(a)(1)]

As a result of the foregoing criminal violation set forth in Counts Sixteen and Seventeen, the United States of America gives notice to defendant, **ARACELI BENITEZ**, of its intent to seek the forfeiture of the property described below upon conviction and pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 982(a)(1), which states:

> **Title 18 U.S.C. § 982. Criminal forfeiture**
> **(a)(1)** The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957. . . of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

## III.
## Structuring Violation and Forfeiture Statutes
## [Title 31 U.S.C. § 5324(b)(1), subject to forfeiture pursuant to Title 31 U.S.C. § 5317(c)(1)]

As a result of the foregoing criminal violation set forth in Count Eighteen, the United States of America gives notice to defendant, **ARACELI BENITEZ**, of its intent to seek the forfeiture of the property described below upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 31 U.S.C. § 5317(c)(1), which states:

> **Title 31 U.S.C. § 5317. Search and forfeiture of monetary instruments**
> * * *
> **(c) Forfeiture.—**
> **(1) Criminal Forfeiture.—**
> **(A)** In general.—
> The court in imposing sentence for any violation of section 5313, 5316, or 5324 of this title, or any conspiracy to commit such violation, shall order the defendant to forfeit all property, real or personal, involved in the offense and any property traceable thereto.

This Notice of Demand of Forfeiture includes but is not limited to the property described below in Paragraphs IV and V.

## IV.
## Property

1. $174,238.00, in funds seized from bank First Light Federal Credit Union bank account number XXX3281;

2. $13,250.00, more or less, in United States currency

3. Real property and appurtenances located at **14134 Bradley, El Paso, Texas 79938**, with all improvements and attachments thereon, more fully described as follows:

   **Lot 27, Block 24, HACIENDAS DEL NORTE UNIT TWO, an Addition to the City of El Paso, El Paso County, Texas, according to the plat thereof, recorded in Volume 56, Pages 38 and 38A, Plat Records of El Paso County, municipally known as 14134 Bradley, El Paso, Texas 79938;** and

**4.** Any and all property consisting of and/or derived from or property used or intended to be used in the commission of the criminal offense.

## V.
## Money Judgment

A sum of money that represents the amount of proceeds obtained, directly or indirectly, property involved in such offense, or traceable to such property as a result of the violations set forth in Counts One through Seventeen for which defendant, **ARACELI BENITEZ**, is solely liable.

## Substitute Assets

If any of the property described above as being subject to forfeiture for the violations set forth above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with, a third party;
c. has been placed beyond the jurisdiction of the court;
d. has been substantially diminished in value; or
e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of any other property, up to the value of said money judgment, as substitute assets pursuant to Title 21 U.S.C. 853(p) and Fed. R. Crim. P. 32.2(e)(1).

A TRUE BILL.

[redacted]

FOREPERSON OF THE GRAND JURY

JAIME ESPARZA
UNITED STATES ATTORNEY

BY: ______________________________
Assistant United States Attorney